**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| LARRY JONES | CIVIL ACTION |
| VERSUS | 18-1023-SDD-EWD |
| CALIBER HOME LOANS, INC. | |

**RULING**

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendant, Caliber Home Loans, Inc. ("Defendant"), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Plaintiff, Larry Jones ("Plaintiff"), filed an *Opposition*[2] to this motion, to which Defendant filed a *Reply*.[3] For the following reasons, Defendant's motion shall be granted.

**I.    BACKGROUND**

Plaintiff, an African-American home owner, contacted Defendant to inquire about refinancing his thirty-year mortgage in order to lower his interest rate and monthly payments.[4] Defendant's employee informed Plaintiff that Defendant could refinance his mortgage at a lower rate.[5] Pursuant to this conversation, Defendant mailed Plaintiff a refinancing agreement, which Plaintiff then signed and returned. Upon receiving his mortgage statement, Plaintiff realized that, not only was the loan he received not the type

---

[1] Rec. Doc. No. 14.
[2] Rec. Doc. No. 23.
[3] Rec. Doc. No. 30.
[4] Rec. Doc. No. 1, p. 2. These events occurred at an unspecified time in 2018.
[5] *Id.* at 3.
52520

he has anticipated, but he also realized that the mortgage agreement Defendant had on file was not the one that he had signed. He claims that Defendant simply retained the signature page from the original agreement and switched out the remaining pages.

Plaintiff alternatively alleges he was "steered" into a sub-prime loan and away from a prime rate loan. Plaintiff's credit score is 685-690; he claims that a score over 650 qualifies a borrower for a prime rate loan. He further claims Defendant gave him a sub-prime mortgage loan, knowing "he will have the least ability to repay" it,[6] because he is African-American[7] and an "unsophisticated borrower."[8] Plaintiff further alleges that Defendant disguised itself as a traditional lender to build trust, misrepresented or did not disclose the complex terms of the loan, and engaged in unlawful business acts by misrepresenting a sub-prime loan as the best loan for him.[9] As a result of these acts, Plaintiff claims he suffered harm to his financial and overall wellbeing.[10]

Additionally, Plaintiff claims that these acts were fraudulent[11] and resulted in Defendant being unjustly enriched.[12] Plaintiff further claims that Defendant discriminated against him in the following ways: (1) on the basis of race in making available residential real estate transactions, or in the terms or conditions of such transactions, in violation of the Fair Housing Act (FHA), 42 U.S.C. § 3605(a); (2) on the basis of race in the terms, conditions, or privileges of sale of a dwelling, in violation of FHA, 42 U.S.C. § 3604(b); (3)

---

[6] *Id.*
[7] *Id.*
[8] *Id.* at 4.
[9] Rec. Doc. No. 1, p. 5.
[10] *Id.* at 4.
[11] *Id.* at 4. (It is unclear whether Plaintiff is claiming fraud as he stated "[t]he allegations which cover the fraud that [Defendant] committed upon [Plaintiff] is alleged *only* to demonstrate one of the main motives that [Defendant] had to defraud [Plaintiff].") (emphasis added).
[12] *Id.* at 5–6.

52520

on the basis of race with respect to credit transitions, in violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691(a)(1); (4) a pattern or practice of resistance to the full enjoyment of rights granted by FHA, 42 U.S.C. §§ 3601-3619 and the ECOA, 15 U.S.C. § 1691; and (5) in a denial of rights granted by the FHA to groups of persons that raise an issue of general public importance. Plaintiff also claims violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983; Unfair and Deceptive Acts or Practices (UDAP), Credit Services Act (CSA), and Unfair Trade Practices Act and Consumer Protection Law (UTPCPL).[13] Defendant now moves to dismiss Plaintiff's *Complaint*.

Defendant seeks dismissal of all claims. In Defendant's *Memorandum in Support of Caliber's Motion to Dismiss*,[14] it contends that Plaintiff's unjust enrichment and state claims fail under Louisiana law, that his FHA and ECOA claims fail as a matter of law, and that his remaining claims[15] fail to meet basic pleading requirements.

Defendant cites La. R.S. § 6:1122[16] and related jurisprudence in arguing that Plaintiff's state law claims must fail because an oral agreement or an unproduced refinance agreement do not meet the requirements necessary to maintain the action. Defendant contends Plaintiff's claim for unjust enrichment fails for several reasons. First, it failed to meet all the required elements[17] of the claim. Specifically, Plaintiff alleged that

---

[13] *Id.* at 6–7.
[14] Rec. Doc. No. 14–1.
[15] Rec. Doc. No. 14–1, p. 11 (Defendant notes that while Plaintiff brought up several other claims in the first paragraph of the complaint, he did not support, explain, or discuss claims under Title VII of the Civil Rights Act of 1964 42 U.S.C. § 1983, Unfair and Deceptive Acts or Practices (UDAP), Credit Services Act (CSA), and Unfair Trade Practices Act and Consumer Protection Law (UTPCPL)).
[16] *Id.* at 3 (To maintain an action on a credit agreement, the agreement must be "in writing, [express] consideration, [set] forth the relevant terms and conditions, and [be] signed by the creditor and debtor.").
[17] *Id.* at 4–5, citing *Gereighty v. Domingue*, 249 So. 3d 1016, 1033 (La. Ct. App. 2018) ("The 5 elements of unjust enrichment are (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) *an absence of justification or cause for the enrichment and impoverishment*, and (5) no other available remedy at law.") (emphasis added).
52520

he signed a credit agreement, which shows the *presence* rather than the required "absence of justification or cause for the enrichment and impoverishment."[18] Second, the signed agreement is a valid juridical act and any unjust enrichment cannot result from a valid juridical act.[19] Finally, because Plaintiff's allegations sound in tort, he is precluded from bringing a claim under a theory of unjust enrichment.[20]

Defendant insists that Plaintiff's ECOA and FHA claims fail as a matter of law because Plaintiff has not and cannot plead discrimination.[21] Since Plaintiff was granted a loan, his discrimination claim under ECOA[22] and FHA cannot stand. Further, Defendant maintains that Plaintiff cannot meet the FHA requirement that Defendant discriminated in "making available" services[23] because Plaintiff alleged that a loan was made available to him.[24] Plaintiff not only failed to plead that race was a plausible factor for the discrimination in the loan process, but his allegations also demonstrate that Defendant had incentive to offer all applicants sub-prime loans.[25] Moreover, Plaintiff failed to satisfy—or even allege—either disparate treatment or disparate impact, which are requirements for an ECOA and FHA claim.[26]

---

[18] *Id.* at 5, quoting *Gereighty*, 249 So. at 1033.
[19] *Id.*, citing La. Civ. Code art. 2298 ("A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term 'without cause' is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. . .").
[20] *Id.*, citing *Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 245 (La. 2010); La. Civ. Code art 2298 (". . . The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.").
[21] *Id.* at 6.
[22] Rec. Doc. No. 14–1, p.6 ("A lender's approval of a loan application defeats a claim of discrimination under the ECOA." (citing *Colquitt v. Mfrs. & Traders Trust Co.*, 144 F. Supp. 3d 1219 (D. Or. 2015); *Kamara v. Columbia Home Loans, LLC*, 654 F. Supp. 2d 259 (E.D. Pa. 2009))).
[23] *Id.* at 7, quoting 42 U.S.C. § 3605(a).
[24] *Id.*
[25] *Id.* at 8, quoting Rec. Doc. 1, p. 12, 14, ("sub-prime loans are always more profitable," and "[t]he more defective subprime loan products that [Defendant] produced meant the more profit [it] made.").
[26] *Id.* at. 9–10.

52520

Plaintiff opposes[27] Defendant's motion and contends that Defendant's memorandum "misses the mark on all respects: it overstates the pleading requirements for an action in Federal Court, makes inappropriate factual arguments and baseless conclusions, and seeks to introduce arguments which are, in any event, irrelevant to the issues raised in Plaintiff's complaint."[28] Plaintiff contends that he satisfied the pleading requirements laid out in *Twombly* and *Iqbal*.[29] Specifically, Plaintiff maintains that the *Complaint* clearly stated that:

> (1)Plaintiff agreed to and was sent mortgage documents to sign containing a thirty year mortgage agreement; 2) Plaintiff signed said documents and mailed them back to Defendant; 3) Plaintiff received his billing statement for said mortgage and noticed a discrepancy; 4) Plaintiff requested from the Defendant a copy of said documents he signed; and 5) Plaintiff realized that the copy of the documents that Defendant sent him were not the documents Plaintiff had been originally sent when he signed the original mortgage contract.[30]

Plaintiff further contends that he did not simply rely on legal conclusions but instead satisfied the Rule 9(b) particularity standard when he described "the particular circumstances" surrounding events that led him to be a "victim of a fraudulent 'bait and switch' scheme."[31] Plaintiff avers that he and "Defendant orally agreed to a contract [that] was reduced to writing[,] . . . signed[,] . . . and thereafter Defendant fraudulently switched out the documents," retaining only the signature page.[32] The Court now turns to a discuss of the applicable law.

---

[27] However, Plaintiff appears to confuse the proper pleading standard when he requests that the Court follow the unserviceable rule from *Conley v. Gibson*. Id. at 4 (355 U.S. 41, 45–46 (1957)). Additionally, Plaintiff inappropriately asserts new factual allegations not found in the *Complaint*.
[28] *Id.* at 1.
[29] *Id.* at 2.
[30] Rec. Doc. No. 23, p. 3.
[31] *Id.*
[32] *Id.*
52520

## II. LAW AND ANALYSIS

### A. Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[33] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[34] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[35] In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.[36] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[37] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[38] However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[39] In order to satisfy the plausibility

---

[33] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[34] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).
[35] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 540, 570 (2007)).
[36] *Bell Atl. Corp. v. Twombly*, 550 U.S. at 544 (hereinafter "*Twombly*").
[37] *Twombly*, 550 U.S. at 555 (internal citations and brackets omitted).
[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*") (quoting *Twombly*, 550 U.S. at 557).
[39] *Id.* (citing *Twombly*, 550 U.S. at 556).

52520

standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[40] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[41] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[42]

### B. FHA and ECOA Claims

The FHA addresses discrimination in housing. Under the FHA, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges . . . in the provision of services or facilities in connection therewith, because of race."[43] It also prohibits businesses that engage in real estate transactions from discriminating "in making available such a transaction, or in the terms or conditions of such a transaction, because of race . . ."[44] Under this title, "residential real estate-related transaction" is defined as "[t]he making or purchasing of loans or providing other financial assistance."[45] Courts generally give an expansive interpretation to discrimination under the FHA; "to state a claim under the Act, it is enough to show that race was a consideration and played some role in a real estate transaction."[46]

Similar in scope, the Equal Credit Opportunity Act (ECOA) was legislated in response to creditor's unequal treatment towards women, minorities, and elderly persons. The relevant portion states that it is "unlawful for any creditor to discriminate against any

---

[40] *Id.*
[41] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[42] *Twombly*, 550 U.S. at 555 (quoting *Papassan v. Allain*, 478 U.S. 265, 286 (1986)).
[43] 42 U.S.C. § 3604(b).
[44] 42 U.S.C. § 3605(a).
[45] 42 U.S.C. § 3605(b)(1).
[46] *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1386 (5th Cir. 1986) (citing *Moore v. Townsend*, 525 F.2d 482 (7th Cir.1975)).
52520

applicant, with respect to any aspect of a credit transaction . . . on the basis of race."[47] In order to state a claim for relief under the ECOA, Plaintiff's complaint "must plausibly allege that (1) [Plaintiff is] an "applicant"; (2) [Defendant is] a "creditor"; and (3) [Defendant] discriminated against [Plaintiff] with respect to any aspect of a credit transaction on the basis of the plaintiff's membership in a protected class."[48] Under this statute, Plaintiff, a "first-time home refinancer,"[49] qualifies as an "applicant,"[50] and Defendant, a business that provides mortgage refinancing, qualifies as a "creditor."[51]

Under the FHA or the ECOA, discrimination based on race can be "demonstrated by either 'a showing of a significant discriminatory effect' or 'proof of discriminatory intent,' that is disparate impact or discriminatory treatment."[52] A subcategory of these is the practice of "redlining" and "reverse-redlining." Plaintiff's pleadings do little to clarify under which theory he is pursuing his claims; nevertheless, he failed to satisfy the requirements of any single theory.

1. Disparate Impact

"[D]isparate-impact claims 'involve [policies or] practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'"[53] In order to claim disparate

---

[47] 15 U.S.C. § 1691(a).
[48] *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 705–06 (5th Cir.), cert. denied sub nom. *Alexander v. AmeriPro Fundings, Inc.*, 138 S. Ct. 421 (2017).
[49] Rec. Doc. No. 1, p. 1(Repetition in original).
[50] 15 U.S.C. § 1691a(b) ("any person who applies to a creditor directly for an extension, renewal, or continuation of credit").
[51] 15 U.S.C. § 1691a(e) ("any person who regularly extends, renews, or continues credit").
[52] *L & F Homes and Dev., L.L.C. v. City of Gulfport, Miss.*, 538 Fed. Appx. 395, 400 (5th Cir. 2013) (citing *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1386 (5th Cir.1986)).
[53] *L & F Homes & Dev., L.L.C. v. City of Gulfport, Miss.*, 538 F. App'x 395, 400 (5th Cir. 2013) (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003)).
52520

impact, Plaintiff must "identify a 'specific test, requirement, or practice' that is responsible for the disparity."[54] Plaintiff failed to identify any such practice or policy or provide any factual contention that one might exist. Rather, he simply alleged that Defendant "mastermind[ed] and participat[ed] in an undisclosed, systematic scheme."[55] Thus, plaintiff failed to allege any specific policies[56] or facts, but rather "tender[ed] 'naked assertion[s]' devoid of 'further factual enhancement.'"[57]

Further, Defendant contends Plaintiff's claim fails because he did not allege that "[D]efendant's policies [have a] 'disproportionately adverse effect on minorities.'"[58] Rather, Plaintiff only alleged that an impact was felt by "all borrowers of sub prime loans."[59] Again, Plaintiff failed to state his claim with enough "factual enhancement"[60] to survive a motion to dismiss. Plaintiff did not claim that all African-Americans were discriminated against, just himself. Further, Plaintiff abandoned this claim as he failed to respond to Defendant's arguments with any support whatsoever, a violation of Rule 7(f) of the Local Rules of the United States District Court for the Middle District of Louisiana.[61]

---

[54] *L & F*, at 400 (quoting *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)).
[55] Rec. Doc. No. 1, p. 5.
[56] *National Ass'n for Advancement of Colored People v. Ameriquest Mortg. Co.*, 635 F. Supp. 2d 1096 (C.D. Cal. 2009) ("An allegation that mortgage lenders engaged in predatory lending practices aimed at African-American borrowers was sufficient to state a disparate impact claim under the ECOA where the organization identified several specific policies that had a discriminatory effect including the marketing of subprime loans, the deployment of financial incentives, and a lack of meaningful review of loan applications").
[57] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[58] *Id.* at 10, quoting *Tex. Dept. of House & Comm. Affairs v. Inclusive Comms. Project, Inc.*, 135 S. Ct. 2507, 2513 (2015).
[59] *Id.* at 10–11.
[60] *Iqbal*, at 678.
[61] Rule 7(f): Response and Memorandum. Each respondent opposing a motion shall file a response, including opposing affidavits, memorandum, and such supporting documents as are then available, within twenty-one days after service of the motion. Memoranda shall contain a concise statement of reasons in opposition to the motion, and a citation of authorities upon which the respondent relies.
52520

2. <u>Disparate Treatment</u>

While Plaintiff's discrimination claim resonates more in a theory of disparate treatment than disparate impact, it still falls short of stating a claim. A claimant can establish a racial discrimination complaint under the FHA and ECOA "by showing disparate treatment,"[62] which is "deliberate discrimination"[63] that results in treating some people "less favorably than others because of a protected trait."[64] "In order to make out a [disparate treatment] claim under either the FHA or the ECOA, a plaintiff must articulate facts which, if taken as true, would demonstrate that actions were taken against him as a result of race."[65] "There can be no liability without a finding that the protected trait (*e.g.* race) motivated the challenged action."[66] Plaintiff offered only vague and conclusory allegations which are legally insufficient to establish a claim for disparate treatment.

Moreover, Defendant contends that, because Plaintiff's allegations demonstrate that he was granted a loan, a discrimination claim under the FHA or ECOA fails as a matter of law.[67] The cases Defendant relies upon[68] in support of this contention are

---

[62] *Phoenix v. Wells Fargo Bank, N.A.*, 16-75-JJB-RLB, 2016 WL 9526225, at *2 (M.D. La. Aug. 24, 2016) (citing *Rowe v. Union Planters Bank of Se. Mo.*, 289 F.3d 533, 535 (8th Cir. 2002)).
[63] *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 909–10 (5th Cir. 2019) (citing *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000)).
[64] *Inclusive*, at 909, citing *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (internal citations omitted).
[65] *Phoenix v. Wells Fargo Bank, N.A.*, No. 16-75-JJB-RLB, 2016 WL 7379001, at *2 (M.D. La. Dec. 20, 2016) (citing *Reece v. Countrywide Home Loans Inc.*, No. 06-81, 2008 WL 4559809, at *2 (N.D. Tex. Oct. 10, 2008)).
[66] *Inclusive*, at 910 ("a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) that he applied for and was qualified for a loan; (3) despite his qualifications, plaintiff's loan application was denied; and (4) the lender continued to approve loans for applicants with qualifications similar to those of the plaintiff) (citing *Greater New Orleans Fair Hous. Action Ctr., Inc. v. Hotard*, 275 F.Supp.3d 776, 786 (E.D. La. 2017); *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1556 (5th Cir. 1996) (evidence must create reasonable inference race was significant motivating factor); *Woods–Drake v. Lundy*, 667 F.2d 1198, 1202 (5th Cir. 1982) ("Plaintiff need only prove that race must have been a significant factor in defendant's dealings)).
[67] Rec. Doc. No. 14–1, p.6.
[68] *Kamara v. Columbia Home Loans, LLC*, 654 F.Supp. 2d 259 (E.D. Pa. 2009); *Colquitt v. Mfrs. & Traders Trust Co.*, 144 F.Supp. 3d 1219 (D. Or. 2015).
52520

distinguishable in the Court's view. Here, Plaintiff does not allege that he was denied a loan;[69] he does allege that the agreement he signed included the less favorable terms at issue.[70] Nevertheless, the plain language of the statutes illustrate that the denial of a loan is not always the dispositive factor; rather, discrimination in the terms, conditions, or any aspect of a credit transaction is still actionable under the ECOA and FHA.[71]

Defendant also notes that Plaintiff failed to adequately allege disparate treatment because he failed to "allege that white or non-minority applicants received more favorable terms."[72] While this is one method of stating a claim, it is not the only one. To state a claim under the FHA or ECOA, a claimant must only "articulate facts which, if taken as true, would demonstrate that actions were taken against him as a result of racial . . . discrimination."[73]

Viewing Plaintiff's *Complaint* in the light most favorable to him, and taking all of his well-pled claims as true for purposes of this motion, the Court finds that Plaintiff has failed to support his claims with any factual support that would raise such claims above mere speculation.[74] Further, in his *Opposition*, Plaintiff utterly failed to address or support any

---

[69] After it was discovered that the claimant in *Colquitt* had received a loan modification from April 2010 to April 2013, the Court dismissed the corresponding portion of the plaintiff's claim that she had not received a loan modification.

[70] In *Kamara*, the Court dismissed a claim under the ECOA, finding that prior to signing the loan contract, the claimant was aware that it was not "on substantially the terms" she was promised.

[71] § 3605(a) bars discrimination "in the terms or conditions," § 3604(b) bars discrimination in the "terms, conditions, or privileges," and § 1691(a) bars discrimination "with respect to any aspect of credit transaction."

[72] Rec. Doc. 14–1, p. 10. (citing *City of Miami Gardens v. Wells Fargo & Co.*, 328 F.Supp 3d 1369, 1381 (S.D. Fla. 2018).

[73] *Phoenix*, at *2.

[74] *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

52520

claim for disparate treatment. Under applicable jurisprudence, that claim is abandoned as a matter of law.[75]

   3. Reverse Redlining

Courts in some jurisdictions have begun to recognize not only redlining—the process of denying credit to group based on location—but also reverse redlining as a legally cognizable theory of recovery under the ECOA or FHA. Reverse redlining is "a lending scheme that targets low-income minorities, offering them exorbitantly high interest rate loans in large amounts, even though they do not have the ability to repay, thereby approving a loan designed to fail, and resulting in loss of the home through foreclosure."[76] A reverse redlining claimant must allege:

> (1) that [he] is a member of a protected class; (2) that [he] applied and was qualified for a loan; (3) that the loan was given on grossly unfavorable terms; and (4) that the lender either intentionally targeted her for unfair loans or currently makes loans on more favorable terms to others.[77]

In the present case, Plaintiff alleged the first and second elements when he stated that he is African-American, and he applied (and was qualified for) mortgage refinancing.[78] For the third element, he alleged he was given a sub-prime rate loan that

---

[75] *See U.S. ex rel. Woods v. SouthernCare, Inc.*, 2013 WL 1339375 at *7 (S.D. Miss. Mar. 30, 2013)("The Relators did not adequately brief their opposition to the Defendant's Motion to Dismiss Count Three on state law claims of fraud, suppression, and deceit. As such, they have abandoned Count Three. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (concluding that plaintiff's failure to defend her "retaliatory abandonment" claim in response to the defendant's motion to dismiss constituted abandonment of the claim); *Dean v. One Life Am., Inc.*, No. 4:11–CV–203–CWR–LRA, 2013 WL 870352, at *2 (S.D. Miss. Mar. 7, 2013) (holding that by failing to address the defendant's argument in her response, the plaintiff abandoned her claim); *Alexander v. Brookhaven Sch. Dist.*, No. 3:07–CV–640–DPJ–JCS, 2009 WL 224902, at *4 (S.D. Miss. Jan. 28, 2009) (stating that the plaintiff "appears to have abandoned [her Equal Pay Act] claim having not defended it" in her response to the defendant's motion to dismiss), *aff'd*, 428 F. App'x 303 (5th Cir. 2011)).
[76] *Equicredit Corp. of N.Y. v. Turcios*, 300 A.D.2d 344, 346 (2002).
[77] *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 876 (N.D. Cal. 2010) (citing *Hafiz v. Greenpoint Mortg. Funding*, 652 F.Supp.2d 1039, 1046 (N.D.Cal. 2009)).
[78] Rec. Doc. No. 1, pp. 2–3.
52520

included rates worse than a prime rate loan. However, Plaintiff failed to provide any factual details beyond his own credit score which was accompanied by a legal conclusion that his score qualified him for more favorable terms.[79] Further, Plaintiff failed to adequately plead the fourth element as Plaintiff did not allege that Defendant took any positive actions towards inducing him into taking out a loan he could not afford but argues, instead, that **he reached out to Defendant** in hopes of attaining refinancing. Because Plaintiff's allegations demonstrate that he sought out the loan, and Defendant did not actively induce him to do so, Plaintiff has failed to plead the required elements and cannot state a claim for reverse redlining. Any claim for reverse redlining is dismissed with prejudice.

The Court also notes that Plaintiff's *Opposition* argument fails to substantively address Defendant's motion under these statutes. To the extent Plaintiff seeks to amend his *Complaint* via his *Opposition* memoranda by alleging new factual allegations that were not previously pled, the Court will not consider these allegations.[80] The law is well-settled that arguments in a brief are not a substitute for properly pleaded allegations: "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss."[81] Further, these allegations refer to Countrywide Financial who is not a party to this case. Plaintiff claims:

> Furthermore the former Chairman and CEO of Caliber, Joe Anderson, was previously in charge of Countrywide Financials Consumer Markets Division, which had a troubled history.

---

[79] *Id.* at 3.
[80] Rec. Doc. No. 23 at 5.
[81] *Becnel v. St. Charles Par. Sheriff's Office*, No. 15-1011, 2015 WL 5665060, at *1 n.3 (E.D. La. Sept. 24, 2015) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) Document Number: 49570 (collecting cases)). Because a Rule 12(b)(6) motion tasks the Court with "assess[ing] the legal sufficiency of the complaint," the Court does not consider allegations that appear for the first time in plaintiffs' briefing. *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012).
52520

Plaintiff contends that, through discovery, it will be revealed that Joe Anderson brought a plethora of former Countrywide Financial executives to Caliber Home Loans, Inc.

Through discovery Plaintiff wants to investigate whether said executives instituted at Caliber some of the same practices that had previously ensnared Countrywide Financial.[82]

These statements are inappropriate for several reasons. First, the statements demonstrate that Plaintiff's allegations against Defendant Caliber are rooted in speculation surrounding allegations not pled, but believed, about Countrywide National. Further, Plaintiff's claim that discovery is necessary to meet his pleading requirement has been foreclosed by the Supreme Court: "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[83]

With respect to race, Plaintiff submits two paragraphs regarding a bank's purported requirement to collect borrower race and ethnicity data and then ostensibly argues that the Defendant failed to collect such data.[84] In no way does this strained argument transform Plaintiff's pleadings to allege that Plaintiff himself was actually targeted and discriminated against on the basis of his race. Moreover, Plaintiff's response is inadequate as a matter of law as it is not responsive to the elements necessary to be pled to state claims under the FHA or the ECOA.

---

[82] Rec. Doc. No. 23 at 5-6.
[83] *Iqbal*, 556 U.S. at 678-79.
[84] *See* Rec. Doc. No. 23 at 6 ("Furthermore, Defendant should have collected race data for every loan it originated secured by a residence, regardless of Defendant's obligation to report that data, and should have the same data for every loan it funded, purchased or acquired through its correspondent lenders.").
52520

Accordingly, as amendment would be futile and Plaintiff has largely abandoned the FHA and the ECOA claims for failing to substantively oppose, Plaintiff's FHA and ECOA claims are dismissed with prejudice.

### C. State Law Claims – Fraud and Unjust Enrichment

Defendant contends Plaintiff's state law claims of fraud and unjust enrichment are precluded under the Louisiana Credit Agreement Statute, codified at La. R.S. 6:1122, which expressly prohibits an action against a creditor based on an oral credit agreement. This statute operates as a "statute of frauds" for the credit industry.[85] The purpose of the statute is "to prevent potential borrowers from bringing claims against lenders based on oral agreements."[86] "In an action by a creditor, the debtor shall not assert a defense based on the terms and conditions of a credit agreement, unless the agreement is in writing, expresses conditions, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."[87]

Defendant maintains that, because the parties have a valid credit agreement, and Plaintiff's state law claims seek to recover for promised credit terms that are not memorialized therein, the Credit Agreement Statute precludes Plaintiff's state law claims. At first glance, the Court is inclined to agree. However, Plaintiff's argument is not simply that the written agreement does not comport with the alleged oral promises; rather, Plaintiff challenges the authenticity of the document itself by alleging that he did not sign the second agreement but that Defendant attached his signature page from a previous

---

[85] *See EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank*, 467 F.3d 466, 469 (5th Cir. 2006) (quoting *King v. Parish Nat'l. Bank*, 2004–0337, (La.10/19/04), 885 So.2d 540, 546).
[86] *Id.* at 469 (quoting *Jesco Constr. Corp. v. Nationsbank Corp.*, 2002–0057 (La.10/25/02), 830 So.2d 989, 992).
[87] La. R.S. 6:1122.1(A)(1).
52520

agreement. Indeed, La. R.S. 6:1122.1 provides defenses to written credit agreements: "Nothing in this Section shall limit the debtor's ability to assert a defense of forgery, identity theft, mistaken identity, lack of authorization, lack of contractual capacity, or payment of the debt."[88] The Court finds that Plaintiff's scant allegations may trigger this defense.

Nevertheless, Plaintiff's allegations of fraud fail to satisfy the Rule 9 particularity requirement. Rule 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake."[89] "A dismissal for failure to plead fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim under Rule 12(b)(6)."[90] In other words, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out."[91] The fraud allegations in Plaintiff's *Complaint* are woefully insufficient to meet this standard. However, as Plaintiff has not sought leave to amend his *Complaint* in this matter, the Court will grant leave to amend his fraud claim.

The Federal Rules of Civil Procedure provide that "leave to amend shall be freely given when justice so requires."[92] Moreover, "courts should ordinarily grant a plaintiff **at least one** opportunity to amend before dismissing a complaint with prejudice for failure to state a claim.[93] Where the Court has found that amendment is futile, or Plaintiff abandoned his claims, amendment will not be allowed.

---

[88] La. R.S. 6:1122.1(B).
[89] Fed. R. Civ. P. 9(b).
[90] *Southland Sec. Corp. v. Inspire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[91] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (quoting *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)).
[92] Fed. R. Civ. P. 15(a)(2).
[93] *Matthews v. Stolier*, No. 13-6638, 2014 WL 5214738 at *12 (E.D. La. Oct. 14, 2014)(citing *Hart v. Bayer Corp.,* 199 F.3d 239, 247 n.6 (5th Cir. 2000))(emphasis added).
52520

Turning to Plaintiff's claim for unjust enrichment, the Court finds that this claim must be dismissed with prejudice. La. C.C. art. 2298 expressly states that the remedy of unjust enrichment "is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule."[94] A plaintiff is precluded from seeking recovery under a theory of unjust enrichment if he pleads another cause of action, regardless of whether the plaintiff is successful on the other theory of recovery.[95] Thus, if the law provides a plaintiff with another remedy, the plaintiff "has failed to state a cause of action in unjust enrichment."[96] Plaintiff has clearly pled a host of other causes of action in this case; thus, he has no viable claim for unjust enrichment, and this claim is dismissed with prejudice.

### D. Miscellaneous Claims[97]

Although Plaintiff fails to plead the following causes of action or provide any factual support for seeking relief thereunder, Plaintiff's "Prayer for Relief" seeks relief under the following laws/statutes: Title VII of the Civil Rights Act of1964 42 U.S.C. § 1983, Unfair and Deceptive Acts or Practices (UDAP), Credit Services Act (CSA), Unfair Trade Practices Act and Consumer Protection Law (UTPCPL).[98] The Court agrees with Defendant that these claims have not been properly pled and are not properly before the Court. Shockingly, Plaintiff argues that:

> [H]e has alleged 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting his claims under the Fair Housing

---

[94] La. Civ. Code art. 2298.
[95] *Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 243, 244 (La. 2010).
[96] *Id.*
[97] The Court notes its displeasure with the pleading and briefing submitted by counsel for Plaintiff. The pleading of these claims, and the meritless defense of same in the *Opposition* memoranda, are frivolous, violative of the Federal Rules of Civil Procedure and the Local Rules of the Middle District of Louisiana, and beneath the professional expectations for attorneys admitted to the Bar of the Middle District of Louisiana.
[98] Rec. Doc. No. 1, ¶ 23.

52520

Act (FHA), 42 U.S.C. § 3601, et seq., as well as under Title VII of the Civil Rights Act of 1964 42 U.S.C. § 1983, Unfair and Deceptive Acts or Practices (UDAP), Credit Services Act (CSA), Unfair Trade Practices Act and Consumer Protection Law (UTPCPL),and the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691. Bell Atlantic Corp., 550 U.S. at 556.[99]

Plaintiff even cites jurisprudence purportedly supporting his "claim" under Title VII, which strains credulity as Title VII applies to claims of discrimination against employers.[100] Plaintiff does not aver that Defendant is or was his employer; thus, Title VII provides Plaintiff no relief. To the extent these claims are not properly pled, they do not require dismissal; however, Plaintiff's counsel is cautioned that pleading causes of action without underlying factual support and a viable legal foundation could warrant Rule 11 sanctions.

### III. CONCLUSION

For the reasons stated above, Defendant's *Motion to Dismiss*[101] is GRANTED. All claims asserted are dismissed with prejudice except Plaintiff's state law claim of fraud. Plaintiff's fraud claim is dismissed without prejudice, and Plaintiff shall have leave of court to amend his *Complaint* to allege his fraud claim in compliance with Rule 9 within twenty-one (21) days of this *Ruling*.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana the 24th day of July, 2019.

*Shelly D. Dick*
_____
**SHELLY D. DICK, CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[99] Rec. Doc. No. 23 at 8.
[100] *See Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (dismissing student's Title VII claim against a college and its employees: "Title VII prohibits unlawful employment practices by employers. 42 U.S.C. § 2000e–2(a). Emerson does not aver that any of the defendants employed him.").
[101] Rec. Doc. No. 14.
52520